UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAMEL DANZY | No. 21 CR 491<br><br>Judge Robert W. Gettleman |

**GOVERNMENT'S SENTENCING MEMORANDUM AND
OBJECTION TO THE PRESENTENCE INVESTIGATION REPORT**

The UNITED STATES OF AMERICA, by JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, respectfully submits this memorandum in advance of the sentencing of defendant Jamel Danzy. For the reasons set forth below, an above-Guidelines sentence of 60 months' imprisonment is warranted and appropriate in this case.[1]

**I.    OFFENSE CONDUCT[2]**

    **A.    Law Enforcement Recovered the Gun Used to Kill a Police Officer and Seriously Wound Another.**

On August 7, 2021, at approximately 9:00 p.m., Chicago Police officers Ella French, Carlos Yanez, and Joshua Blas conducted a traffic stop of a Honda CR-V

---

[1] As stated below, the government's position is that the applicable Guidelines range is 18 to 24 months' imprisonment, and not 10 to 16 months' imprisonment as calculated in the Presentence Investigation Report ("PSR"). PSR ¶ 80.

[2] The facts recited herein are based on information set forth in the PSR, defendant's plea agreement, the criminal complaint, defendant's August 8, 2021 recorded interview with Alcohol, Tobacco, Firearms, and Explosives (ATF) personnel, and law enforcement reports. The government will provide the Court under separate cover with a copy of defendant's recorded interview and the relevant law enforcement reports, which were previously produced to defense counsel.

driven by Eric Morgan. Eric's brother, Emonte Morgan, was also in the vehicle. During the traffic stop, Emonte used a gun that Eric had in the vehicle to shoot and kill Officer French and to shoot Officer Yanez in the head multiple times. After Emonte shot the officers, Eric picked up the gun and fled the scene. Chicago Police officers apprehended Eric a short while later and recovered the gun, which Eric still had on him.

The gun Eric possessed was a Glock Model 44, .22 caliber semiautomatic pistol bearing serial number AFBZ467 ("Firearm One"). Eric was prohibited from having that gun due to a prior felony conviction for theft and only had access to the gun because his friend—defendant Jamel Danzy—provided it to him, knowing that Eric was a felon who was prohibited from obtaining or possessing a firearm. Unlike Eric Morgan, Danzy's criminal record was clean, so he *could* purchase a firearm. And that is exactly what Danzy did, purchasing a firearm on March 25, 2021—the same Glock pistol that Eric had on him approximately five months later on August 7, 2021, when his brother, Emonte, used it to kill Officer French and seriously wound Office Yanez.

**B. Danzy Illegally Purchased Firearm One for Eric Morgan.**

As the PSR accurately reflects, in approximately March 2021, Eric Morgan, who is identified as Individual A in the indictment and defendant's plea agreement, asked Danzy to buy him a gun. At the time, Danzy had been in a relationship with Eric for approximately three years and knew that Eric could not buy a gun for himself because Eric was a convicted felon. In particular, Danzy knew that Eric had a felony conviction from Wisconsin "for a gun" and was still on parole. Danzy Recorded

2

Interview at 28:10-29:25. Danzy, who was a resident of Indiana, also knew that Eric lived in Chicago, Illinois, with his family and thus was not a resident of Indiana.

Despite knowing those facts about Eric, Danzy chose to arm him with a deadly firearm. Eric showed Danzy the type of gun he wanted on the internet, and on March 25, 2021, Danzy went to federally licensed firearms dealer in Hammond, Indiana ("FFL A"), and purchased Firearm One for Eric. In order to purchase Firearm One from FFL A, Danzy certified on a Form 4473 Firearms Transaction Record that he was the "actual transferee/buyer of the firearm." Danzy, however, knew that certification was false because he purchased Firearm One for Eric and not for himself.

After purchasing Firearm One, Danzy gave it to Eric along with ammunition that Danzy purchased for the gun. For the next several months, Danzy knew that Eric oftentimes took Firearm One back and forth from Danzy's home in Hammond, Indiana, to Chicago, where Eric lived. Danzy let Eric keep Firearm One in Danzy's residence when Eric did not want to possess it. Danzy last saw Firearm One under his bed a few days before August 7, 2021, sometime after which Eric took the gun with him back to Chicago and Emonte used it to kill Officer French and shoot Officer Yanez.

### C. Danzy Illegally Purchased a Second Gun for His Cousin.

In his plea agreement, Danzy also acknowledged that he unlawfully purchased a second firearm for his cousin, whom Danzy knew was a convicted felon. Specifically, on March 17, 2021, Danzy went to FFL A and purchased a Glock Model 19, 9mm semiautomatic pistol bearing serial number BSKT584 ("Firearm Two") for his cousin

3

("Individual B"). That same day, Danzy certified on a Form 4473 Firearms Transaction Record that he was the "actual transferee/buyer" of Firearm Two. At the time, Danzy knew that certification was false because Danzy purchased Firearm Two for Individual B and therefore was not the actual transferee/buyer of the firearm. After purchasing Firearm Two, Danzy transferred it to Individual B, knowing that Individual B was a convicted felon. Indeed, prior to Danzy's purchase of Firearm Two, Individual B had prior felony convictions for forgery, credit card fraud, unlawful possession of a firearm, and attempted vehicle theft.

## II.  PROCEDURAL BACKGROUND

On September 7, 2021, Danzy was charged by indictment with conspiring with Individual A (Eric Morgan) to commit the following offenses against the United States: (a) to transfer, sell, trade, give, transport, and deliver a firearm to a person, namely Individual A, who defendant knew and had reasonable cause to believe was not a resident of the State in which defendant resided, in violation of Title 18, United States Code, Section 922(a)(5); (b) to knowingly make any false and fictitious oral and written statement and to furnish and exhibit any false, fictitious, and misrepresented identification in connection with the acquisition and attempted acquisition of a firearm and ammunition from a licensed dealer that was intended and likely to deceive the licensed dealer with respect to any fact material to the lawfulness of the sale and other disposition of such firearm and ammunition, in violation of Title 18, United States Code, Section 922(a)(6); and (c) to sell and otherwise dispose of any firearm and ammunition to a person, namely Individual A, knowing and having

reasonable cause to believe that such person had been convicted in any court of a crime punishable by imprisonment for a term exceeding one year, in violation of Title 18, United States Code, Section 922(d)(1), all in violation of Title 18, United States Code, Section 371. R. 11.

On July 27, 2022, Danzy pled guilty to that charge pursuant to a plea agreement. R. 29-30. Danzy is scheduled to be sentenced by this Court on December 14, 2022. R. 35.

### III. OBJECTION TO GUIDELINES CALCULATION

The government agrees with the Probation Office's determination that the base offense level is 14 pursuant to Guidelines §§ 2X1.1(a) and 2K2.1(a)(6)(C). PSR ¶ 16.

However, the government submits that the base offense level should be increased by an additional four levels under Guideline § 2K2.1(b)(6)(B), given that Danzy transferred firearms to Eric Morgan and Individual B with knowledge and reason to believe that the firearms would be used or possessed in connection with another felony offense.[3] *Id.* ¶ 17. Application Note 14(C) to Guideline § 2K2.1 clarifies that "another felony offense" means "any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." In *United States v. Jones,* 528 Fed. App'x 627,

---

[3] The plea agreement and government's version did not include the four-level enhancement in the preliminary Guidelines calculation. R. 30, Plea Agreement ¶ 9(b). Upon further review, the government respectfully submits that this enhancement is required by Guideline § 2K2.1(b)(6)(B).

5

631 (7th Cir. 2013), the Seventh Circuit held that a four-level enhancement under § 2K2.1(b)(6)(B) was proper when the defendant, convicted of being a felon in possession of a firearm, "transferred the gun with reason to believe that the [recipient], by accepting it, would himself commit the crime of possession of a firearm by a felon." *See also United States v. Jackson,* 741 F.3d 861, 864 (7th Cir. 2014) (holding that four-level enhancement under § 2K2.1(b)(6)(B) applied when defendant transferred firearm to someone defendant had reason to believe would be illegally possessing the firearm). The same result is warranted here.

Danzy admitted in his plea agreement that he purchased Firearms One and Two on behalf of others, namely, Eric Morgan and Individual B. Plea Agreement ¶ 6. Danzy further admitted that he "had reasonable cause to believe that [Eric Morgan] was a convicted felon" and knew that his cousin, Individual B, was a convicted felon. *Id.* Therefore, like the defendants in *Jones* and *Jackson*, Danzy knew or had reason to know that Eric and Individual B could not legally possess a firearm at the time he gave each of them a gun. Accordingly, the four-level enhancement under Guideline § 2K2.1(b)(6)(B) should be applied, and the adjusted offense level prior to acceptance should be 18, not 14. PSR ¶¶ 16-22.

The government agrees with the Probation Office that Danzy has no criminal history points and falls in criminal history category I. *Id.* ¶¶ 27-29.

Based upon a total offense level of 15 (after the three-level acceptance of responsibility reduction) and a criminal history category of I, the Guidelines range is 18 to 24 months' imprisonment.

## IV. APPLICATION OF THE SENTENCING FACTORS

Section 3553(a) requires this Court to impose a sentence that is "sufficient, but not greater than necessary," to comply with the purposes of sentencing. 18 U.S.C. § 3553(a). Those purposes include the need for the sentence "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." *Id.* § 3553(a)(2)(A)-(D).

In order to determine the sentence to impose, the Court must consider the statutory factors listed in § 3553(a)(1)-(7). One of those factors is the advisory range set by the Sentencing Guidelines, and another is the Commission's policy statements. *Id.* § 3553(a)(4), (a)(5). Although the Sentencing Guidelines are advisory only, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States,* 552 U.S. 38, 49 (2007). For the reasons set forth below—in particular, the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence—consideration of the § 3553(a) factors reveals that an above-Guidelines sentence is warranted and necessary in this case.

7

### A. The Nature and Circumstances of Defendant's Crime Warrant An Above-Guidelines Sentence.

Danzy's offense was gravely serious. He lied to a federally licensed firearms dealer to purchase a gun and then gave that deadly weapon to a dangerous felon—callously and selfishly disregarding the public safety in the process. Even if Danzy's offense ended with the straw purchase of Firearm One in March 2021 and did not result in the death of one individual and the maiming of another, it would have constituted a serious crime that justified a Guidelines sentence, at a minimum. *E.g., United States v. Elsaddique,* 252 Fed. App'x 992, 993 (11th Cir. 2007) (affirming Guidelines sentence of 14 months' imprisonment for straw purchaser of three firearms); *United States v. Ataa,* 18 CR 104, R. 47, 52 (N.D. Ill. Jan. 31, 2019) (sentencing straw purchaser of 13 firearms to Guidelines sentence of 41 months' imprisonment). Tragically, the story did not end with that straw purchase. Instead, that crime led to the horrific events on August 7, 2021, when that illegally purchased firearm was used to shoot two police officers who were conducting a routine traffic stop, with one of the officers dying from those gunshot wounds. In light of those considerations, this Court should not hesitate to impose an above-Guidelines sentence in this case.

### 1. A Departure from the Applicable Guidelines Range Is Warranted Because One Death and One Significant Physical Injury Resulted from Danzy's Conduct.

Indeed, an above-Guidelines sentence is warranted here given what happened with the illegally purchased firearm that Danzy gave Eric Morgan. Sections 5K2.1 and 5K2.2 authorize a sentence above the applicable Guidelines range if "death" or

8

"significant physical injury" resulted from the offense of conviction. Under these provisions, a court must engage in two-step process. First, the court must determine whether a departure is warranted, and second, if so, the court must then determine just how far to depart. *United v. Bayles,* 986 F.2d 1415, 1993 WL 46892, at *3 (4th Cir. Feb. 12, 1993). "In other words, a death resulting from a defendant's crime opens the door; the extent to which death or serious injury was intended or knowingly risked is a factor going to how far the door is opened." *Id.*[4]

Three cases—two involving deaths and one involving significant physical injury—show why a departure is warranted here. In *United States v. Lawson,* the defendant straw purchased a gun in May 2017 for his childhood friend, whom defendant knew to be a violent felon. 18 CR 60, R. 1, Criminal Compl. at 1-3 (S.D. Ohio Feb. 12, 2018). About nine months later, in February 2018, two police officers responding to a domestic-disturbance call were met with gunfire from the childhood friend, who used the illegally purchased gun to kill both officers. *Id.* As a result of those officer deaths, the Probation Office recommended increasing defendant's offense level by 10 levels pursuant to § 5K2.1, increasing defendant's Guidelines range from 18 to 24 months' imprisonment without that enhancement to 57 to 71 months' imprisonment with that enhancement. *Lawson,* 18 CR 60, R. 34, Gov't Sentencing Mem. at 13 (S.D. Ohio Oct. 9, 2018). Following Probation's

---

[4] In deciding how much to depart from the applicable Guidelines range, Sections 5K2.1 and 5K.2 state that a court should look at factors such as the defendant's state of mind, the degree of planning or preparation, whether multiple deaths resulted, the extent of any significant physical injury to a victim, and the dangerousness of defendant's conduct.

recommendation, the district court sentenced defendant to 60 months' imprisonment for straw purchasing the gun for his childhood friend. *Lawson*, 18 CR 60, R. 38, Judgment at 1-2 (S.D. Ohio Oct. 25, 2018).

Likewise, in *United States v. Nguyen*, the district court departed from the applicable Guidelines range pursuant to § 5K2.1 in a straw-purchase case where the recipient of two firearms shot and killed two firefighters who were responding to a blaze he set after the defendant provided him with the firearms. 622 Fed. App'x 89, 90 (2d Cir. 2015). The defendant's Guidelines range was 18 to 24 months' imprisonment. *United States v. Nguyen*, No. 13 CR 6044, 2017 WL 1397142, at *1 (W.D.N.Y. Apr. 19, 2017). Nevertheless, the district court sentenced the defendant to 96 months' imprisonment, departing upwards because "[d]eath and significant physical injury unquestionably resulted from [defendant's] crimes." *Nguyen*, 622 Fed. App'x at 90. The sentence was affirmed on appeal, because, as the Second Circuit noted, the defendant acted "recklessly" in providing firearms to the shooter (her neighbor), whom she knew to be a violent and mentally unstable felon, and because "the Sentencing Guidelines did not sufficiently account for the severity of [defendant's] conduct and culpability." *Id.* at 90-91 (affirming sentence and upward departure from Guidelines range due to "the multiple deaths and injuries that resulted," which took defendant's conduct "well outside the heartland of straw man purchase cases").

Similarly, in *United States v. Kitchen*, the district court departed upward from the applicable Guidelines range pursuant to § 5K2.2 in a straw-purchase case where

the gun was later used by an unknown and subsequent transferee to shoot and injure an innocent motorist. 87 Fed. App'x 244, 245 (3d Cir. 2004). In *Kitchen*, the defendant bought and illegally resold a 9mm pistol, which was later resold to an unknown third party. *Id.* The unknown recipient then used the firearm to shoot and severely wound a motorist in a fit of road rage. *Id.* The defendant's Guidelines range was 37 to 46 months' imprisonment. *Id.* However, the district court departed from that range under § 5K2.2 based on the injuries to the motorist, increased the offense level by two additional levels, which resulted in a Guidelines range of 46 to 57 months' imprisonment, and sentenced defendant to 57 months' imprisonment. *Id.* The Third Circuit affirmed the sentence, finding that the defendant was "sufficiently culpable to warrant [a] departure," even though he neither knew the shooter nor sold the firearm to the shooter, and even though the shooting occurred over 13 months after the defendant sold the gun to the original buyer. *Id.* at 247. The Third Circuit noted those mitigating factors but concluded the district court's departure was appropriate because "by engaging in the offense of conviction, [the defendant] knowingly created and deliberately disregarded the risk that one or more firearms would be used to criminally injury another person." *Id.* In short, because the straw purchaser "recklessly initiated 'the chain of circumstances that resulted in injury" to the motorist, the Third Circuit agreed that a departure was warranted. *Id.* As in *Nguyen*, the court based its holding, in part, on the fact that the "actual injury inflicted" took the case "out of the 'heartland' of 2K2.1." *Id.* at 246-47.

11

The same logic applies in this case. Danzy acted recklessly in buying a gun for Eric Morgan, whom Danzy knew to be a felon involved in a prior firearm offense. In so doing, Danzy helped put into motion a chain of events that risked both death and serious bodily injury to others. One police officer is dead and another seriously injured as a result of that reckless chain of events, and the substantive firearm-offense Guideline, § 2K2.1, does not take into account the death and significant physical injury that resulted from Danzy's offense. As a result, this case falls well outside the heartland of straw-purchaser cases and merits a sentence well above the otherwise applicable range of 18 to 24 months' imprisonment.

Furthermore, it is significant that the current case, like two of the cases cited above that involved sentences of 60 and 96 months, resulted in the loss of life of an essential public servant. Law enforcement officers and first responders put their lives on the line each and every day to serve and protect the people in the communities they serve. Given the nature of their jobs, these public servants are particularly susceptible to physical harm at the hands of individuals who illegally possess firearms and other deadly weapons. The illegal purchase and transfer of firearms fuels this senseless and unacceptable danger, and the tragic shooting of Officers French and Yanez on August 7, 2021, during an otherwise routine traffic stop provides a vivid example of the deadly consequences of such offenses. Simply put, conduct like this must be deterred. A stiff sentence in this case provides an important tool that must be used to meet the important objective of deterrence in our criminal justice system. An impactful sentence is also necessary to promote respect for the

law and impose just punishment for serious crimes that lead to tragic consequences like we have seen here.

## 2. A 10-Level Increase in the Offense Level is Appropriate.

An upward departure of 10 offense levels—resulting in a Guidelines range of 57 to 71 months' imprisonment—is appropriate given the totality of the circumstances in this case. Such a sentence would account for the dangerousness of Danzy's conduct, which amounted to "a callous and extreme risk to public safety." *See United States v. Daniells,* No. 15 CR 10150, 2017 WL 2256988, at *4 (D. Mass. May 23, 2017) (noting the danger to the community caused by straw purchasers of guns). It also would accurately reflect the extent to which Danzy knowingly risked death or serious injury by giving a deadly, semi-automatic handgun to someone he knew to be a dangerous felon. *See Nguyen*, 622 Fed. App'x at 90. Finally, such a sentence would accurately reflect the fact that the offense level for Danzy's offense, as determined under § 2K2.1, accounts only for the *potential* loss of life, not the *actual* loss of Officer's French life nor the *actual* injury to Officer Yanez. *Id.* at 90-91.

Like in the *Lawson* case, the government submits that a 10-level increase in the offense level is appropriate here under §§ 5K2.1 and 5K2.2, given the death of Officer French and the significant physical injuries Officer Yanez sustained from the shooting. A 10-level enhancement would increase Danzy's total offense level after acceptance of responsibility to 25 and result in an advisory Guidelines range of 57 to 71 months' imprisonment. A sentence of 60 months' imprisonment, which the

Government recommends, would fall within that range and be commensurate with the sentence imposed in *Lawson*.

While Danzy likely will argue that a departure is not needed in this case because he did not intend for the officers to be killed or injured, "there was (and still is) no binding . . . Supreme Court precedent requiring a district court to make an 'intended' or 'knowingly risked' factual finding" to depart under § 5K2.1. *United States v. Robinson*, 732 Fed. App'x 405, 409 (6th Cir. 2018); *see also Bayles,* 1993 WL 46892 at *3 ("Bayles argues that the court was required to find that she 'intended or knowingly risked death' before departing. We disagree that such a finding is necessary."). Rather, this Court may depart when, as here, a defendant "put into motion a chain of events that risks serious injury or death, *even when an intent to harm is entirely absent and the defendant was not directly responsible for the death.*" *U.S. v. Scheetz*, 293 F.3d 175, 191 (4th Cir. 2002) (emphasis added).

Without the gun and ammunition that Danzy purchased for Eric, it is undisputed that Eric and Emonte Morgan would not have had access to Firearm One during the August 7, 2021 traffic stop and could not have used that gun to kill Officer French and wound Officer Yanez. Because Danzy shares blame for what happened to those officers with the gun he illegally purchased and transferred to Eric, an upward departure from the otherwise applicable Guidelines range is needed here.

**B.    An Above-Guidelines Sentence Will Account for Defendant's History and Characteristics.**

It cannot be denied that Danzy had a challenging and traumatic childhood. PSR ¶¶ 34-44. Despite the challenges he faced, Danzy took steps to pursue higher

14

education, earning both a bachelor's and master's degree. *Id.* ¶¶ 61-74. As a result, he has had stable, full-time employment since approximately 2019, working as a teaching assistant and youth-camp counselor, among other things. *Id.* While Danzy may argue that his circumstances are mitigating and warrant a downward departure, they do not excuse his decision to put guns into the hands of known felons. Danzy admittedly knew that it was illegal to purchase guns for others but did so anyways—not once but *twice* in the same month. He gave one gun to Eric Morgan, whom Danzy believed had a prior felony conviction for a gun offense, and gave the other gun to his cousin, whom Danzy knew to be convicted felon. Danzy also purchased ammunition for the gun he gave to Eric and let Eric take the gun to and from Chicago as he pleased and store the gun at Danzy's residence when Eric did not want it with him.

The same characteristics that might otherwise serve as mitigating factors enabled Danzy to commit the very crime for which he was convicted; without a clean record, he could not have purchased the firearms in the first place. His educational and employment background indicate that he should have known better than to lie to obtain firearms. As such, Danzy's mitigating factors should not weigh heavily in the Court's sentencing analysis.

### C. An Above-Guidelines Sentence Will Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, and Afford Adequate Deterrence.

Straw purchasers like Danzy perpetuate the cycle of violence that is terrorizing this city, which is overwhelmed with illegal guns and gun violence. They flood the streets with illegal firearms—so much so that the Supreme Court has stated "no part"

15

of Congress's "comprehensive scheme . . . to keep guns out of the hands of criminals" would work "if the statute turned a blind eye to straw purchases." *Abramski v. United States,* 573 U.S. 169, 180 (2014). Murders, shootings, car jackings, and armed robberies are daily occurrences in Chicago. The tools that drive that mayhem are firearms in the hands of dangerous people who are often legally prohibited from purchasing and possessing them.

Danzy's crime warrants a significant sentence that must reflect the serious nature of the offense, promote respect for the law, provide just punishment, and afford general deterrence. Violent criminals in this city are growing increasingly dismissive of the law and the consequences of their actions. A sentence that does not include a significant term of incarceration would send the message that the consequences of placing guns in the hands of violent criminals—including those who then use those guns to shoot and kill others—are minor. At this moment in this city, it is critically important that sentences for straw purchasing offenses reflect that these are serious offenses that cannot be tolerated.

It is appropriate for this Court to take into consideration the geographic location of a crime when fashioning a sentence. Indeed, the Seventh Circuit has upheld an above-Guidelines sentence for a firearms violation of 18 U.S.C. § 922(a)(3) in a case where the Sentencing Guidelines did not "adequately reflect the seriousness of this particular type of offense as it relates to this geographic area [Chicago]." *U.S. v. Hatch,* 909 F.3d 872 (7th Cir. 2018) (finding that sentencing judge "may depart from the Guidelines based on locality-specific factors").

16

While the goals of retribution and deterrence are important considerations in any sentencing, they carry extra weight here. As other courts have recognized, "a substantial prison term" is necessary "to satisfy the need for general deterrence" and to "deter [other] straw purchasers who put guns onto the streets." *United States v. Collins,* No. 09 CR 155, 2010 WL 183376, at *9-10 (E.D. Wis. Jan 11, 2010) (imposing above-Guidelines sentence of 24 months' imprisonment in straw-purchaser case); *see also United States v. Politano,* 522 F.3d 69, 73-74 (1st Cir. 2008) (affirming above-Guidelines sentence in illegal gun sale case based in part on the need for general deterrence). Indeed, "the class of straw purchasers—by definition adults without records—may be more amenable to deterrence than other classes of defendants." *Collins,* 2010 WL 183376 at *10. A serious sentence is thus necessary to deter potential future straw purchasers from committing the same crime as Danzy.

### D. An Above-Guidelines Sentenced Is Also Needed to Protect the Public and Avoid Unwarranted Sentencing Disparities.

This Court must also consider the need for the sentence "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). While it is not clear if Danzy poses a continuing threat to the public, other courts have cited this factor in straw-purchase cases to justify above-Guidelines sentences. *E.g., United States v. Madsen,* 809 F.3d 712, 720 (1st Cir. 2016) (affirming above-Guidelines sentence of 36 months' imprisonment because the need to protect the public from straw-purchaser defendant warranted "a significant period of incarceration").

Furthermore, this Court must also consider the need to avoid unwarranted sentencing disparities among similarly situated defendants. 18 U.S.C. § 3553(a)(6).

17

For the reasons set forth above, a 60-month sentence would not result in an unwarranted sentencing disparity for Danzy, in light of the significant sentences other courts have imposed in straw-purchaser cases that later resulted in death or significant physical injury. *E.g., Lawson*, 18 CR 60 (S.D. Ohio Oct. 25, 2018) (60-month sentence where transferred firearm led to death of two police officers); *Nguyen*, 62 Fed. App'x at 91 (96-month sentence where transferred firearms led to death of two firefighters); *Kitchen*, 87 Fed. App'x at 245 (57-month sentence where transferred firearm led to severe injury of motorist).

## V. SUPERVISED RELEASE

Supervised release is important in this case to ensure that Danzy does not turn again to straw purchasing guns or other criminal behavior. PSR at 15-20. The maximum term of supervised release is three years, and the government recommends that this Court impose a term of supervised release of three years. The government agrees with the conditions of supervised release the Probation Office recommended in the PSR, which are narrowly tailored to facilitate supervision by a probation officer and which will help support Danzy's rehabilitation and reintegration into the community and ensure that he is engaged in lawsuit pursuits rather than criminal activity upon his release from prison. *Id.*

## VI. CONCLUSION

For the foregoing reasons, a sentence of 60 months' imprisonment and three years of supervised release is just, fair, and reasonable, and also sufficient, but not greater than necessary, to support the purposes of sentencing.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By: /s/ *Prashant Kolluri*
PRASHANT KOLLURI
Assistant United States Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 353-5300